IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. SHERIDAN, | ) | CASE NO.: 1:18 CV 1162 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| COLUMBIA LOCAL SCHOOL | ) | |
| DISTRICT BOARD OF EDUCATION, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant. | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF #25). Plaintiff opposed that motion, and Defendant filed a Reply in support of its position. (ECF #34, 39). Plaintiff also filed two motions to strike exhibits attached to the Defendant's Motion for Summary Judgment. (ECF #32,33). After careful consideration of the issues and a full review of the filings and all relevant authority, Plaintiff's Motions to Strike are both DENIED, and Defendant's Motion for Summary Judgment is, hereby, GRANTED.

# PROCEDURAL HISTORY

Mr. Sheridan filed his Complaint on May 21, 2018, alleging defamation and a violation of his First Amendment and Due Process rights. He seeks a monetary award in excess of $100,000.00, and injunctive relief in the form of recision of the allegedly defamatory materials from his public employment record.

The Complaint alleges that Mr. Sheridan, a teacher at the Columbia High School was "falsely accused by the Board Superintendent Craig Bansek in a public letter of reprimand of being dishonest by telling [a] student's parents that [another employee] had told lies about the student's medical condition. . . ." (ECF #1, ¶9). Mr. Sheridan claims that as a result of this letter he was "damaged by the loss of valuable professional reputation, suffered humiliation, loss of income, loss of present and future opportunity in his profession, and insult." (ECF #1, ¶16). Mr. Sheridan also claims that because the reprimand was directed at his "criticism of a public employer's failure to properly educate and control a student in its charge," and "blowing a whistle on [another employee]," it constitutes a violation of his First Amendment and Due Process rights. (ECF #1, ¶23).

On or before September 6, 2018, the reprimand letter referenced in the Complaint was removed from Mr. Sheridan's personnel file and all other files at the Board. The letter referenced in the Complaint was later replaced with a September 6, 2018 letter of reprimand that does not accuse Mr. Sheridan of dishonesty or otherwise include any of the communications or alleged accusations addressed in the Complaint. In October of 2018, the Plaintiff sought leave to extend his time to file an Amended Complaint, in order to permit him to add allegations relating to the issuance of the September 6, 2018 letter. (ECF #9). The Court granted the extension without

opposition from the Defendant. (ECF #10). However, no Amended Complaint was ever filed. (ECF #11). Following a protracted discovery period, Defendant filed its Motion for Summary Judgment, and Plaintiff filed an opposition and two motions to strike exhibits to the Summary Judgment Motion.

## FACTS [1]

Mr. Sheridan has been employed by the Columbia Local School District Board of Education ("the Board") as a high school teacher since August of 2004. He is a member of the Columbia Local Education Association ("CLEA"), which is the labor union for teaching employees. He does not contest that he has been the subject of multiple disciplinary proceedings over the course of his tenure, though he disputes the truth of the accusations that led to his two suspensions. In 2008 Mr. Sheridan received a reprimand letter for talking about other employees in an unprofessional manner. In December of 2009, Mr. Sheridan was suspended with pay for approximately ten weeks after multiple teachers reported that he said he was going to shoot up the school after his mother died. In 2011, he was again suspended with pay for seventeen days, and received a reprimand letter after a student reported that Mr. Sheridan touched him inappropriately while driving him home from school. Mr. Sheridan received another reprimand letter in August of 2014, for being disrespectful and unprofessional in his communications with a

---

[1]

In accordance with the applicable standards on a motion for summary judgment, genuine questions of material fact relevant to each motion for summary judgment have been resolved in favor of the non-moving party. The facts are taken from the undisputed portions of the parties' recitation of facts, those facts asserted in the Complaint which are not contradicted by the evidence, and from the witness affidavits and depositions submitted in connection with the summary judgment briefings.

direct supervisor. In September of 2015, Mr. Sheridan was issued yet another reprimand letter for coaching for another school district on day he had called in sick to work at Columbia.

The letter that is the subject of Mr. Sheridan's Complaint was issued on April 11, 2018, and came about as a result of a written complaint filed against Mr. Sheridan by a guidance counselor, Ms. Neff. Ms. Neff's complaint alleged that on February 28, 2018 during parent/teacher conferences, Mr. Sheridan told two teachers that she lies to protect students, and told a student's parents that she covers for their child and does not hold him responsible for his actions. She also reported that on March 6, 2018, Mr. Sheridan became combative and shouted at her, at her assistant, and at the school nurse, after she approached him to discuss a situation with the student who had missed Mr. Sheridan's class a month earlier.

The student at issue had gone to the office instead of Mr. Sheridan's class because he reported having symptoms of increased heart rate and a possible anxiety attack. Ms. Neff was not at work that day, but the student was seen by a school nurse. Mr. Sheridan believed that the student was faking his symptoms to avoid class. Due to this belief, Mr. Sheridan asked the principal if the student had any documented medical issue, and the principal allegedly reported that none were in the student's file. Mr. Sheridan then started an email exchange with Ms. Neff seeking information about the incident.

Ms. Neff told Mr. Sheridan that there had been documentation filed with the school in 2009 indicating that the student had a medical condition called superventricular tachycardia, but that the parents did not include the condition on the Medical Emergency Forms filed each subsequent year. Superventricular tachycardia can cause sporadic symptoms, including an abnormally fast heartbeat, and can mimic an anxiety attack. Ms. Neff also informed Mr. Sheridan

that the student has exhibited such symptoms on a recurring basis, a few times a year, and that the school nurses, and guidance counselor staff were aware of it.

Mr. Sheridan responded to the information by chiding Ms. Neff for not bringing it to his attention sooner and asking her how the condition was to be treated. Ms. Neff reported what she had been told by the nurse about how the student's complaints were handled that day, including that the student's mother had been called to pick him up, but the student "refused to leave with her (there are extenuating circumstances)." She also explained that because the mother doesn't list the condition on his emergency medical form she wasn't at liberty to share the information with a teacher unless it impacted their class, and that she does not know why he wasn't informed that day when the student did miss his class.

Mr. Sheridan again responded to Ms. Neff, "confronting her," accusing her of helping the student "find ways to duck turning in work that is due," and telling her that her explanation "does not cut it with me regarding why he should NOT be accountable like every other one of my students in this public school setting." (ECF #34). Mr. Sheridan told Ms. Neff that the principal told him there was nothing in his files documenting the medical condition "yet you think it is a reasonable excuse that can be used randomly whenever he needs it. . ." He also stated that the nurse "thought he was having an anxiety attack. . . nothing more." Mr. Sheridan's Opposition characterizes this exchange as Mr. Sheridan "demanding" that Ms. Neff "do her government job which description did not include making bogus medical excuses for [the student] to so he could miss Mr. Sheridan's class." (ECF #34, p. 6).

Again Ms. Neff responded by letting Mr. Sheridan know that "the medical condition is definitely documented in his permanent file," and that it has "been necessary to call the nurse

over to our building at least 2-3 times per year due to episodes that are most definitely brought on by anxiety and stress. So, an anxiety attack and an episode from this condition would have basically the same symptoms." In these emails to Mr. Sheridan explaining the situation, Ms. Neff noted that the principal had already decided by this point that the student in question would not be allowed to receive credit of any work that he missed due to this episode. She also pointed out that when kids come to her office or to the nurse's clinic "it doesn't mean they are trying to dodge work," as they "have much more going on than what goes on here."

Following this email exchange, on March 6, 2018, Ms. Neff went to Mr. Sheridan's office during planning time to try to talk to him about the situation. She claims he immediately became combative and shouted at her. She also claims he followed her back to her office and continued to shout at her, her administrative assistant, and the school nurse, accusing them of lying about the student's medical condition and the episode leading to this exchange. Mr. Sheridan denies that he raised his voice during this exchange, but does not dispute the content of the interaction. He also points out that Ms. Neff was not at the parent-teacher conference to hear whether he accused of her being a liar, but he does not actually dispute that he did so.

Ms. Neff filed a complaint with the Board about Mr. Sheridan's behavior during this encounter, and her belief that he had lied about her to other teachers and to the student's parents during the February 28, 2018 conferences. Upon receiving the complaint, Mr. Bansek, the District's Superintendent, and Mr. Lynch, the school's principal, started an investigation into the allegations raised therein. Mr. Bansek interviewed and obtained written statements from witnesses to Mr. Sheridan's comments at the parent-teacher conference, and the encounter on March 6, 2018. Witnesses confirmed the allegations made in Ms. Neff's complaint. Mr. Lynch

then sent Mr. Sheridan a letter requesting a meeting to discuss the allegations. Mr. Sheridan

attended along with the CLEA President and the CLEA's attorney. Mr. Bansek also attended.

Mr. Sheridan was given the opportunity to respond to the complaint.

Following the investigation, Mr. Bansek weighed the evidence and determined that there

was sufficient support for the allegations in the complaint. On April 11, 2018, he issued a letter

to Mr. Sheridan reprimanding him for the events on February 28, 2018 and March 6, 2018. The

letter stated in relevant part:

> This letter serves as a written reprimand in response to your recent misconduct.
> Specifically, during parent-teacher conferences on February 28, 2018, you
> inappropriately told the parents of one of your students, in the presence of two
> other teachers, that the guidance counselor had lied about a previous medical
> situation involving their son, that said medical situation was merely an excuse for
> their son to miss class, and that the guidance counselor often covers up and
> enables their son's behavior. Then, during school on March 6, 2018, you verbally
> attacked the guidance counselor, the administrative assistant to the guidance
> counselor, and the school nurse in the presence of a student, shouting at them and
> accusing them of lying about the student's medical condition.
>
> Clearly the behavior that you engaged in on February 28, 2018 and March 6, 2018
> as described above was inappropriate and unprofessional. Furthermore, such
> misconduct undoubtedly constitutes conduct unbecoming to the teaching
> profession in violation of the first principle of the Licensure Code of Professional
> Conduct for Ohio Educators. ..
>
> . . . you are hereby warned that termination proceedings will be commenced
> against you the next time that you engage in any inappropriate and/or
> unprofessional behavior.

(ECF #34). That letter was placed in Mr. Sheridan's personnel file. As authorized by

Section 7.06 of the teachers' Collective Bargaining Agreement ("CBA"), Mr. Sheridan responded

with a written rebuttal to this letter, and later filed a grievance on the basis that the letter was

issued without just cause, and that he never received written notice that the meeting with Mr.

Lynch and Mr. Bansek could result in disciplinary action. Mr. Sheridan sought "[r]emoval of the letter from personal [sic] file along with any other file and expunged."

The grievance was initially denied, and Mr. Sheridan appealed it to the Board of Education. Before any formal appeal process was conducted, Mr. Sheridan and his lawyer met with members of the Board of Education. Mr. Sheridan's union representative argued that the letter violated Section 17.02 of the CBA because the principal's request for a meeting with Mr. Sheridan prior to the issuance of the letter did not specifically state that such meeting could result in disciplinary action. Following the meeting, the Board of Education decided to remove the April 11, 2018 letter from Mr. Sheridan's personnel file and all other District files, and to start the process all over again, in compliance with the applicable notice requirements. The Board did not take any formal action on the grievance, nor did Mr. Sheridan or the CLEA pursue any further appeal. Consequently, the grievance was automatically withdrawn pursuant to Section 4.04(B) of the CBA.

When the Board renewed the disciplinary process, they following the notice requirements set forth in the CBA, and re-interviewed several of the key witnesses. During this second round of interviews, one witness who was present at the February 28 parent-teacher conferences stated that she did not believe that Mr. Sheridan spoke unprofessionally about Ms. Neff during the conference. The letter that resulted from the subsequent proceedings, therefore, removed any mention of the February 28, 2018 parent-teacher meeting. It also removed any reference to the professional licensing requirements. The revised letter read as follows:

> This letter serves as a written reprimand in response to the misconduct that you engaged in on March 6, 2018. Specifically, on such date, you acted in an inappropriate and unprofessional manner by yelling at the guidance counselor, the

administrative assistant to the guidance counselor, and the school nurse, pointing your finger at them, and accusing them of not being truthful about a student's medical condition.

Unfortunately, this is not the first instance in which you were disciplined for engaging in this type of misconduct. Going forward, it is expected that you behave in an appropriate and professional manner at all times and refrain from engaging in any further acts of misconduct. Failure to do so could result in additional disciplinary action being taken against you, including termination of your employment.

(ECF #34, p. 12). This letter was placed in Mr. Sheridan's personnel file. Mr. Sheridan did not file a grievance or a written rebuttal in response to the September 6, 2018 letter.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Evidence may be presented by citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). In lieu of presenting evidence, Fed. R. Civ. P. 56(c) also allows that a party may show that the opposing party's evidence does

"not establish the presence of a genuine dispute" or that the adverse party "cannot produce admissible evidence to support the fact."

According to Fed. R. Civ. P. 56(e),

> [i]f a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

### I. Motions to Strike

Plaintiff's Motions to Strike seek to strike various exhibits filed in support of Defendant's Motion for Summary Judgment. As a preliminary matter, the Court will accept the technically late filings of Defendant's exhibits without penalty based on justifiable delay. Plaintiff also specifically seeks to strike Defendant's references to Plaintiff's prior disciplinary history. Defendant's references to Plaintiff's prior disciplinary history. Plaintiff challenges the validity of

accusations underlying many of his prior disciplinary actions, but does not dispute that he did

receive the stated discipline. Because these instances were provided in the context of establishing

his disciplinary history and were not offered as proof of any of the underlying allegations,

Plaintiff's motion to strike references to his prior disciplinary actions is denied. Further, Mr.

Bansek's inability to recall specific details about some of Mr. Sheridan's prior disciplinary events

during his deposition does not justify striking those events from the record. Mr. Sheridan,

himself, had knowledge of each of these events prior to the discovery proceedings in this case,

and, consequently, had the opportunity to examine Defense witnesses about the events whether

Mr. Bansek had specific knowledge and/or recollection of each and every action or not.

With regard to the Defendant's references to the CBA, grievance procedures, JG's

medical records, and alleged heresay from Ms. Browning, and investigatory notes of Mr. Bansek,

there is no basis upon which to strike these statements. The admissibility and relevance of the

challenged evidence will be evaluated by the Court if and when it becomes necessary to the

determination of the case, and each item will be considered only to the degree proper based upon

that determination. For these reasons, Plaintiff's Motions to Strike Exhibits (ECF #32, 33) are

both denied.


II. Defamation

There is no dispute that the Complaint was made in reference to the April 11, 2018

reprimand letter, which has since been removed from all District files. There is also no dispute

that the September 6, 2018 letter was issued after the Complaint in this case had been filed, and

that Plaintiff, despite being given the opportunity to do so, did not amend his Complaint to

include it in his pleadings. Therefore, the Court will focus solely on the April 11, 2018 letter when reviewing Mr. Sheridan's claim for defamation.

Mr. Sheridan's Complaint alleges that the April 11, 2018 reprimand letter was defamatory. Under Ohio law, "defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *Jackson v. City of Columbus*, 117 Ohio St. 3d 328, ¶ 9 (2008)(*quoting A & B-ABell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council* (1995), 73 Ohio St. 3d 1, 7. A Plaintiff proves defamation by establishing the following five elements:

(1) a false and defamatory statement,

(2) about the plaintiff,

(3) published without privilege to a third party,

(4) with fault of at least negligence on the part of the defendant, and

(5) the statement was defamatory per se or caused special harm to the plaintiff.

*Gosden v. Louis*, Ohio App.3d 195, 206 (1996).

A. Mootness

The Defendant argues that Mr. Sheridan's defamation claim is moot because the evidence shows that the April 11, 2018 was removed from Mr. Sheridan's file and all other District files, and Mr. Sheridan has provided no evidence that would indicate that the letter was published to a third party prior to its removal. (Bansek Depo. at 43; Bansek Aff. ¶21-22). Defendants have indeed provided evidence to show that the April 11 letter has been removed from all District files,

-13-

and, although Plaintiff refuses to concede this point, he has offered absolutely no evidence to the contrary. His brief in Opposition claims that the letter "remains a part of the Plaintiff's employee record with the Board," and cites Mr. Sheridan's deposition as support. Mr. Sheridan's deposition does not support this statement, however. During his deposition, Mr. Sheridan did not dispute Defendants' representation that the April 11 letter had been removed from his file, and he testified that he has not looked in his file to see if the letter was still there. (Sheridan Depo. at 82, 84-85, 96, 110, 129, 131). Because the uncontested evidence shows that the letter is no longer a part of any District file, Plaintiff's request for injunctive relief rescinding the letter is denied as moot.

B.  Publication

Mr. Sheridan's Response in Opposition, however, also makes the claim that prior to its removal, the April 11 letter was "was republished several times." Again, he cites his own deposition testimony as support, and again, the testimony cited fails to support his contention. In fact, it contradicts it. Mr. Sheridan actually testified that he has no knowledge that anyone ever saw or talked about the letter after it was put in his file. (Sheridan Depo. at 82, 84-85, 96, 110, 129, 131). Mr. Bansek also testified, on behalf of the Board, that no one has reviewed Mr. Sheridan's official personnel file or any of the documents within it, since the April 11 letter was originally placed in the file. (Bansek Depo. at 12; Bansek Aff. ¶31).

Publication of a false statement is an essential element of a defamation claim. There is absolutely no evidence that the April 11 letter was ever published prior to its removal from Mr. Sheridan's file. Plaintiff argues that because his personnel file is a government record that could be the subject of a Freedom of Information Act Request or the Ohio's Public Records Law, R.C.

149.43, placement of the letter within the file was sufficient to constitute publication.    Ohio

Courts have rejected this argument.  Placement of a statement in someone's file, even if that file

may be considered a public record, does not equate to publication for purposes of defamation if

no third-party accesses the information.  *See, Potter v. Rets Tech Center Co., Inc.*, 2008 WL

615423 (2nd Dist. 2008)(apprehension that someone may see information within an individual's

public file "anticipates a publication that has not yet occurred").[2]  As there is no evidence that the

April 11, 2018 letter was ever viewed by a third-party, and it has since been removed from Mr.

Sheridan's files and all other files of the Board of Education, Mr. Sheridan has no viable present

or future claim for defamation based on this letter.

    C. Fault

    In addition to the failure to prove publication, Mr. Sheridan has failed to prove the

element of fault.  Mr. Sheridan has not provided any evidence that anyone at the Board of

Education issued the reprimand letter(s) with any degree of fault, whether it be negligence or

greater.[3]  Even if the Court accepts Mr. Sheridan's argument that he should be treated as a private

figure for purposes of his defamation claim, Plaintiff admits that he must, at a minimum, prove

---

[2]

Further, even if the placement of the letter in Mr. Sheridan's file could be considered a
publication, he can prove no damages caused by the letter because he has no evidence that
any third-party ever saw the letter or was influenced by it in any way.

[3]

    The element of fault is separate from the defense of qualified privilege.  "A
communication made in good faith on any subject matter in which the person
communicating has an interest, or in reference to which he has a duty, is privileged if made
to a person with a corresponding interest or duty...."  *Hahn v. Kotten*, 43 Ohio St. 2d 237,
245-246 (1975).  Because Mr. Sheridan has not proven publication, it is difficult to
determine whether qualified privilege would apply as there is no third person to whom the
information has been communicated, and, therefore, can be no determination at to whether
such person has a corresponding interest or duty.

by clear and convincing evidence that the Board failed to act reasonably in attempting to discover the truth or falsity of the publication at issue. *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180 (1987).

In an attempt to create an illusion of fault, or unreasonableness, Mr. Sheridan states in his Opposition that when asked Mr. Bansek did not recall ever talking to Ms. Neff about her accusations against the Plaintiff. (ECF #12, citing Bansek Depo. at 70). This is a blatant misrepresentation of the testimony. In fact, Mr. Bansek was not asked about Ms. Neff's accusations against Mr. Sheridan, rather he was asked whether he spoke to Ms. Neff about Mr. Sheridan's accusations against her. He specifically said "yes," he did talk to her, and when asked what she said "exactly," he referred the questioner to the investigative report because he could not recall "exactly" what he said. (Bansek Depo. at 70).[4] In fact, the uncontested evidence shows that

---

[4]

     Mr. Sheridan's opposition also tries to paint the Board as having an "axe to grind" against Mr. Sheridan. That image is also specifically belied by the testimony. Mr. Bansek's uncontested testimony shows that the Board sought additional input from Mr. Sheridan during the investigation leading to the April 11 and September 6 letters. It also shows that Mr. Sheridan refused to answer most questions, that he had a union representative with him at the meeting, and that the Board did not have their mind made up about discipline when the investigation began. (Bansek Depo. at 78-81). Further, at the behest of Mr. Sheridan's lawyer, Mr. Bansek verified that after the issuance of the September 6 letter, Mr. Sheridan again faced a complaint, this time for "harassing behavior." In that instance the Board investigated the complaint and Mr. Sheridan was cleared of any fault. This contradicts Mr. Sheridan's narrative that he was being targeted for discipline.

     In addition, Mr. Sheridan characterized Mr. Bansek's testimony, in which he stated that Mr. Sheridan should not be protected from discipline even if the content of his complaint against Ms. Neff was valid, as 'incredible,' 'malicious,' and 'absurd,' and cited it as proof that the Board was out to get him. This is at best, a hyperbolic mischaracterization of the testimony. In fact, during this segment of testimony Mr. Bansek was merely pointing out that Mr. Sheridan's discipline was not based on the content of his communications, nor on the validity of his arguments, but rather was solely based on the manner in which he communicated those points, i.e., by allegedly yelling and pointing fingers at another school

-16-

the Board received a complaint, conducted a thorough investigation, weighed the evidence and credibility of witnesses (including Mr. Sheridan), and issued a written reprimand based on its findings. Although Mr. Sheridan was warned that future violations of the expectations for professionalism could result in discipline up to and including termination, no substantive discipline was initiated based solely on the complaint at issue in this case.

Mr. Sheridan does not contest that the complainant and witnesses accused him of behavior that would appropriately be subject to discipline. (Sheridan Depo. at 122-128). Although he denies being verbally abusive, he acknowledged in his deposition that during the encounter complained of he had a strongly held disagreement with the complainant, Ms. Neff. He also acknowledges that during the conversation related to that disagreement he did not use a "library voice," he did have a "tone," and that in Ms. Neff's opinion his "voice was raised and loud. " (Sheridan Depo. at 120, 122). There were at least three witnesses who verified the complaint made by Ms. Neff, and no one other than Mr. Sheridan, himself, who disputed the characterization of the encounter as verbally abusive, or denied that he was yelling and pointing fingers. Mr. Sheridan has cited no evidence, let alone clear and convincing evidence that would indicate that the Board was unreasonable in its attempts to determine the truth of Ms. Neff's complaint, or the conclusions its reached in the reprimand letter(s).

D. <u>September 6, 2018 Letter</u>

In his Opposition to the Defendant's Motion for Summary Judgment, Mr. Sheridan, in likely recognition of the removal of the April 11, 2018 from his file, shifts the focus of his

---

employee in school in front of other workers and students. (Bansek Depo. at 77-78).

defamation arguments to the September 6, 2018 reprimand letter, which was issued after this case was filed. As set forth above, the Complaint in this case makes no reference to the September 6, 2018 letter. Despite the subsequent issuance of the September 6 letter, Mr. Sheridan never attempted to amend his Complaint to address that letter. He filed no grievance about the September 6 letter and did not file a written rebuttal to the letter as he had done for the April 11 letter. The September 6 letter, unlike the April 11 letter did not reference the professional licensing codes, and cannot be read to include or infer any allegation of dishonesty on Mr. Sheridan's part, which is the only substantive claim of defamation made in the Complaint. In fact, the September 6 letter completely eliminated any mention of the allegations made by Ms. Neff in connection with the parent-teacher conferences from February 28, 2018, because the follow-up investigation uncovered conflicting testimony about validity of those allegations. The only subject of reprimand in the letter is the allegedly unprofessional and inappropriate manner in which Mr. Sheridan addressed Ms. Neff, her assistant, and the nurse on March 6, 2018. Because the Complaint does not state a claim for defamation based on the September 6 letter; because Plaintiff's Complaint does not identify any defamatory statement that was made in the September 6 letter; because Plaintiff has not proven any actionable degree of fault in the Board's issuance of the September 6 letter; and, because there is no evidence that the September 6 letter was published to any third-party, the issuance of that letter does not provide any additional factual or legal support for Mr. Sheridan's defamation claim.

III.  Section 1983/First Amendment/Retaliation

The parameters of Plaintiff's second claim are not clearly articulated in the Complaint. The

four paragraphs set forth in Count Two mention allegations of deprivation of right to freedom of expression (relating to criticism of a public employer's failure to properly educate and control a student), deprivation of due process during an investigation, interference with a property interest in continued and future employment, whistleblowing, defamation, "potential termination of employment proceedings," false charges, and retaliation (by means of discipline) for exercising first amendment rights. (ECF #1). Plaintiff's Opposition to the Motion for Summary Judgment does little to clarify or further define the parameters of the claim, although it arguably focuses more on the concept of retaliation: "Plaintiff alleged and the Defendant BOARD committed an intentional act of retaliation via defaming him because his exercising free speech and due process rights as a government employee to blow a whistle on NEFF to prevent her from helping JG miss classes for unacceptable reasons and in the interest of protecting greater society." (ECF #34).

As set forth above, there is no basis upon which to find that the reprimand letter(s) at issue in this case were defamatory. The letters did not discipline or reprimand Mr. Sheridan based on the content of any speech. There is also no evidence to suggest that Mr. Sheridan was deprived of due process during the proceedings leading up to the issuance of the letters. The evidence clearly shows that Mr. Sheridan had access to notice of proceedings, representation, opportunity to participate in the investigation, opportunity to participate (with representation) at a hearing, and opportunity to respond to the results of the investigation via written rebuttal and grievance processes under the CBA. It also clearly shows that the Board conducted an investigation, took all witness statements into account, and made a reasoned and well supported determination. There is no evidence that there was any improper motive or that the Board exercised anything other than good faith and reasonable objectivity during this process.

In addition, teacher statements are not considered protected first amendment speech when they are made wile performing the teacher's official duties. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Mr. Sheridan's comments to Ms. Neff were made at school, about a student, in relation to the student's performance and attendance at school. This communication, therefore, took place in the performance of Mr. Sheridan's official school duties, and are not shielded by the First Amendment.

Mr. Sheridan also does not qualify as a whistleblower entitled to protection under state or federal law. He does not provide any evidence that he has satisfied the prerequisites for obtaining whistleblower protections under either the federal or state statutes. He does not cite any evidence that would indicate that he complained in writing about Ms. Neff's behavior to a superior. He has cited no evidence indicating that he made a formal complaint about her behavior to anyone other than herself. There is no suggestion that Ms. Neff is in a position of control over Mr. Sheridan. Mr. Sheridan has pointed to no law, ordinance, or other regulation that Ms. Neff allegedly violated. He has not alleged that the complained of activity posed a significant threat to anyone's health or safety. In short, there is nothing in the record that could support a finding that Mr. Sheridan has engaged in protected activity as a whistleblower. Communicating with a colleague about a disagreement in policy or procedure does not create whistleblower status.

Mr. Sheridan has provided no evidence that would suggest that he was disciplined based on the substance of his complaints against Ms. Neff. Rather, all evidence indicates that he was disciplined for the allegedly inappropriate and unprofessional manner in which he communicated

those concerns. Anti-retaliation causes of action were "not intended to immunize insubordinate, disruptive, or nonproductive behavior at work." *Rattigan v. Holder*, 604 F.Supp. 2d 33, 49 (D.D.C. 2009). Unprofessional, confrontational, and rude behavior are legitimate, non-discriminatory reasons for adverse employment actions and other formal and informal discipline, comments, and reactions by supervisors. *See, Carreno v. DOJI, Inc.*, 668 F.Supp. 2d 1053, 1062 (M.D. Tenn. 2009). Further, co-worker complaints about a lack of interpersonal skills or inappropriate communication styles constitutes a legitimate, non-discriminatory grounds for adverse action. *See, Parikh v. Cleveland Hardware & Forging Co.*, No. 1:04CV2363, 2006 WL 1515667, at *9 (N.D. Ohio May 26, 2006).

There is also no evidence that the reprimand letter had any direct material adverse affect on Mr. Sheridan's terms of employment, nor that it has had any affect on his ability to maintain employment with the employer or to gain employment with any future employer. Even if the reprimand letters do make him less attractive to future employers, this alone does not constitute a deprivation of any liberty interest. "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Chilingirian v. Boris*, 882 F.2d 200, 205-06 (6th Cir. 1989).

Finally, even if Mr. Sheridan had provided evidence of the necessary elements for any of the potential claims hinted at in Count Two of his Complaint, he has not sufficiently supported a cause of action against the Board for those alleged actions. Boards of Education are considered local government entities, and in order for a local government to be sued under 42 U.S.C. §1983 for a constitutional violation, it must be shown that the injury was caused by an official policy, custom, or practice of the governmental entity. *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S.

658, 690 (1978). Plaintiff does not allege that Mr. Sheridan's alleged injury was caused by any such policy, practice or custom. He cites *L.A. County v. Humphries*, 562 U.S. 29, 36 (2010) for the proposition that governmental responsibility for constitutional violations also extends to the execution of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. . . ," but does not provide any evidence that the Defendant executed, adopted, or promulgated any such official decision that caused or affected the issuance of Mr. Sheridan's letter(s) of reprimand. Therefore, he has not established any basis for the cause(s) of action referenced in Count Two of his Complaint.

## CONCLUSION

For the reasons set forth above, the Plaintiff's Motions to Strike (ECF #32,33) are both DENIED, and Defendant's Motion for Summary Judgment (ECF #25) is hereby GRANTED. Judgment is entered in favor of the Defendant on all claims, and this case is terminated. All costs to be assessed to the Plaintiff. IT IS SO ORDERED.

Judge Donald C. Nugent
United States District Judge

Date: May 24, 2019

-22-